IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 19, 2017

## PHILLIP ALEXANDER MCWILLIAMS v. STATE OF TENNESSEE

Appeal from the Circuit Court for Sevier County
No. 19209II  Walter C Kurtz, Judge

_____

### No. E2017-00275-CCA-R3-PC

_____

Petitioner, Phillip Alexander McWilliams, appeals the denial of his petition for post-conviction relief from his convictions for aggravated domestic assault and reckless endangerment with a deadly weapon. Petitioner argues that he received ineffective assistance of counsel. After a review of the record and the briefs of the parties, we determine Petitioner has failed to establish that he received ineffective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. NORMA MCGEE OGLE, J., not participating.

William L. Wheatley, Sevierville, Tennessee, for the appellant, Phillip Alexander McWilliams.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; James B. Dunn, District Attorney General; and Rolfe Straussfogel, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

Petitioner was indicted by a Sevier County grand jury for aggravated domestic assault, reckless endangerment with a deadly weapon, and possession of drug paraphernalia. The State alleged that Petitioner pointed a firearm at the victim and discharged the firearm in another direction while Petitioner, the victim, and a child were

inside the house. On April 28, 2014, Petitioner entered a guilty plea to aggravated domestic assault and reckless endangerment with a deadly weapon and received an effective sentence of ten years to be suspended after serving one year in incarceration. In exchange for the plea, the possession of drug paraphernalia charge was dismissed.

On April 27, 2015, Petitioner filed a timely pro se petition for post-conviction relief. Counsel was appointed, and on September 12, 2016, petitioner amended his petition for post-conviction relief, alleging that he received ineffective assistance of trial counsel. An evidentiary hearing was held on January 10, 2017.

According to Petitioner, trial counsel met with him multiple times prior to the entry of the plea. First, Petitioner and trial counsel met in a parking lot and discussed Petitioner's case for approximately thirty minutes. Later, Petitioner and trial counsel met for a second time in a parking lot, and Petitioner retained trial counsel during that meeting. Petitioner claims that, other than one phone call from trial counsel seeking payment of a retainer fee, Petitioner had no contact with trial counsel between the date of the second meeting and the scheduled date for a preliminary hearing. Trial counsel claimed that he "probably" talked to Petitioner on the phone. However, Petitioner maintains that he attempted to contact trial counsel "dozens" of times, but to no avail.

Trial counsel testified that he told the general sessions court at a bond revocation hearing that Petitioner's actions—pointing the firearm at the victim and firing a shot in another direction—were a result of Petitioner's emotional reaction to walking into his house and finding his wife with another man. According to trial counsel, he did this to illustrate to the court that Petitioner was in a situation that caused him to experience intense distress. While speaking about the bond revocation hearing, trial counsel said, "There wasn't a question of guilt or innocence. He had discharged a firearm, a shotgun, inside the house. The only issue was what his punishment was going to be, and I was trying to get him probation." Despite trial counsel's efforts, the general sessions court revoked Petitioner's bond and held him without bond. According to Petitioner's assertions, trial counsel advised the Petitioner to waive his preliminary hearing because he would not get as good of a deal if he burdened the court with a preliminary hearing. On January 31, 2014, Petitioner waived his preliminary hearing.

Petitioner claims that he spoke with trial counsel at his arraignment in circuit court. During that conversation, Petitioner told trial counsel about his need to see a doctor, false information provided by Petitioner's wife, and coaching provided to Petitioner's wife by the police. Petitioner said that after his arraignment, he had no contact with trial counsel until the date of his plea hearing.

Petitioner maintains that trial counsel told him about the contents of the video evidence on the day of his plea hearing. Yet, trial counsel testified, "I didn't review any

video." According to Petitioner, trial counsel stated that "there was no way that [Petitioner] could possibly win at trial[.]" While Petitioner contends that he told trial counsel numerous times about his ability, or lack thereof, to remember the events giving rise to the charges, trial counsel was of the opinion that Petitioner "wasn't even close" to the criteria for an insanity defense. Trial counsel had represented numerous clients with mental impairments since he began his practice of criminal law in 1989. Based upon this experience, trial counsel saw no opportunity for a defense related to Petitioner's inability to remember the facts because Petitioner remembered the basic facts of his whereabouts and did not deny being in the house at the time of the crime. Additionally, trial counsel recounted, "[Petitioner] may have said something like I don't remember pulling the trigger but I don't deny that I did it." Trial counsel quipped, "He certainly never told me anything like aliens had taken over my brain and made me do it or Jesus told me to do it."

At the post-conviction hearing, Petitioner claimed that the events which gave rise to the charges against him occurred during "the middle of a six-day blackout" or "psychotic break." Despite having "clouded memories," Petitioner was able to recount many of the facts surrounding his firing of the shotgun in his home. He claimed that his "black out" was like being in a dream, but he was actually awake.

During the course of trial counsel's representation of Petitioner, trial counsel met with Petitioner, Petitioner's mother, the victim, the victim's father, and members of the Sevier County Special Operations Response Team.[1] According to trial counsel, he spoke with every available witness. At the post-conviction hearing, trial counsel was asked whether he filed for discovery in this case. Trial counsel responded, "I think I had received all of that." However, trial counsel never stated definitively whether he had filed for discovery and also said, "A lot of times they just give you the discovery before you file." Based upon his preparation and experience, trial counsel believed that petitioner's "conviction was a foregone conclusion."

Trial counsel recounted that he met numerous times with the State. He negotiated and received a plea offer from the State, which included one year of jail time. Trial counsel considered the possibility of success at trial, the judge who would be presiding over the potential sentencing hearing, and the date of Petitioner's release before recommending that the Petitioner take the plea deal. After a recitation of the underlying facts and a plea of guilty by Petitioner, the trial court entered a judgment of conviction against Petitioner for aggravated domestic assault and reckless endangerment. Then, pursuant to the agreement, the trial court sentenced Petitioner to consecutive sentences of six years for the assault conviction and four years for the reckless endangerment

---

[1] We note that it appears that trial counsel refers to the victim as "the witness" from time to time during his testimony. Additionally, the record refers to the Sevier County Special Operations Response Team as the "SORT team."

conviction. Petitioner was ordered to serve only one year in jail and the balance of his sentence on supervised probation.

After being released from custody, Petitioner sought treatment by Cherokee Health Systems. On October 22, 2014, Cherokee Health Systems observed Petitioner and diagnosed him with an unspecified adjustment disorder, post-traumatic stress disorder, and an unspecified mood disorder. The diagnosis mentions a personality disorder, but it does not appear to be conclusive because the diagnosis includes the phrase "Deferred / Pending More Information." On October 27, 2014, five days after seeking treatment by Cherokee Health Systems, Petitioner was arrested for public intoxication, and a violation of probation warrant was issued. Later, the violation of probation warrant was amended to include allegations of Petitioner making threating statements on social media. On January 21, 2015, Petitioner pleaded guilty to his violation of probation, and the trial court ordered Petitioner to complete a mental health and alcohol treatment program.

However, on August 19, 2015, another violation of probation warrant was issued after Petitioner was arrested for violation of the implied consent law, driving under the influence, driving on a revoked license, and maintaining a social media account in violation of a court order. As a result, the trial court revoked petitioner's probation, and ordered him to serve the remainder of his sentence in confinement. As a part of Petitioner's intake evaluation, Dr. Susan Glass evaluated Petitioner on February 18, 2016, and diagnosed Petitioner with "Dissociative Amnesia" and "Persistent Depressive Disorder (Dysthymia), with mixed features and mood congruent psychotic features." In Petitioner's amended petition for post-conviction relief, he claimed that "the treatment and diagnosis received by [Petitioner] demonstrate that there was arguably a basis for [trial counsel] to investigate which he failed to do."

After a hearing on the petition, the post-conviction court denied post-conviction relief finding that perhaps "[Trial counsel] did not proceed in his representation of [P]etitioner by the numbers," and "should have communicated better with his client; however, he knew all there was to know about the case." This timely appeal followed.

*Analysis*

Petitioner argues that he received ineffective assistance of counsel because trial counsel failed to visit or correspond with Petitioner for the three months that Petitioner was incarcerated in the Sevier County Jail and trial counsel conducted an inadequate investigation by not filing for discovery and failing to investigate a possible mental health defense. The State counters by arguing that trial counsel thoroughly investigated the facts of the case by speaking with every witness and Petitioner neither had a history of mental illness nor made any statements to trial counsel that warranted pursuing a mental health defense. We agree with the State.

- 4 -

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the Strickland test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[A]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 58 (quoting *Strickland*, 466 U.S. at 691).

*I. Communication by Counsel*

Petitioner argues that trial counsel's alleged failure to visit or correspond with Petitioner for the three months that he was incarcerated in the Sevier County Jail falls below an objective standard of reasonableness as measured by Tennessee Rule of Professional Conduct 1.4. Generally, Rule 1.4 requires attorneys to inform clients of developments in their case, consult with clients about accomplishing the client's objectives, and explain the situation so that the client can make an informed decision. *See* Tenn. Sup. Ct. R. 8, RPC 1.4. Trial counsel testified that he met with Petitioner and spoke with him on his court date, he met with Petitioner multiple times prior to his arraignment, and he "probably" talked to Petitioner on the phone. While this is not ideal communication, Petitioner failed to show any sort of development in his case that trial counsel failed to communicate to him. Also, Petitioner has not shown that his objectives were not accomplished by trial counsel's representation or that Petitioner was unable to

make an informed decision. Without something more, we cannot find that trial counsel was deficient in his communication. Moreover, Petitioner has failed to show that he was prejudiced by trial counsel's actions because he has not shown that, but for counsel's lack of communication, he would not have pleaded guilty. Trial counsel negotiated a plea deal, communicated the offer to Petitioner, and Petitioner accepted the offer. Trial counsel's lack of communication did not affect the guilty plea.

## II. Investigation by Counsel

Next, Petitioner argues that trial counsel was ineffective because he did not properly investigate Petitioner's case when he did not file for discovery and when he did not investigate a possible mental health defense. Petitioner, again, uses the Tennessee Rules of Professional conduct as the measuring stick for objective reasonableness and contends that trial counsel's actions run afoul of Tennessee Rule of Professional Conduct 1.1, which requires an attorney to provide "competent legal representation" to his or her client. Tenn. Sup. Ct. R. 8, RPC 1.1. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." *Id.*

When asked about discovery, trial counsel stated, "I think I received all of that," and "a lot of times they just give you the discovery before you file." Further, trial counsel testified that he spoke to every available witness. The evidence certainly does not preponderate against the post-conviction court's finding that trial counsel "knew all there was to know about the case." The mere failure to file a discovery motion is not enough to render counsel ineffective if other investigation was performed. *See Tyrone G. Meade v. State*, No. 02C01-9708-CR-00316, 1998 WL 599520, at *3 (Tenn. Crim. App. Sept. 11, 1998), *no perm. app. filed*; *Bobby Foutch v. State*, No. 01C01-9103-CC-00085, 1991 WL 255883, at *1 (Tenn. Crim. App. Dec. 5, 1991), *no perm. app. filed*; *Jeffrey R. Johnson v. State*, C.C.A. No. 1, 1990 WL 17186, at *2 (Tenn. Crim. App. Feb. 28, 1990), *perm. app. denied* (Tenn. Jun. 11, 1990). Even if trial counsel did not formally file for discovery, we do not conclude that he was deficient in that regard. Furthermore, Petitioner has failed to show prejudice by pointing to any information pertinent to his guilty plea that would have been discovered by trial counsel if he had filed for discovery.

With regard to trial counsel's investigation of a mental health defense, trial counsel used his experience to determine that Petitioner "wasn't even close" to the criteria for an insanity defense. While Petitioner's mental evaluations were entered as evidence at the post-conviction hearing, they were made after Petitioner's guilty plea and are irrelevant to the evaluation of counsel's effectiveness because this Court evaluates the actions of trial counsel from his perspective at the time of representation. At the time that trial counsel was making a decision about investigating a mental health defense, he would have been relying solely on his interactions with Petitioner. Trial counsel testified that he

saw no opportunity for a mental health defense and stated, "[Petitioner] may have said something like I don't remember pulling the trigger but I don't deny that I did it." The post-conviction court appears to have accredited trial counsel's testimony about Petitioner's statement when the trial court found "Petitioner's statement that he 'didn't remember pulling the trigger but I may have done it' certainly does not indicate a defense." The evidence does not preponderate against the post-conviction court's finding that trial counsel was "well within an objective standard of reasonableness."

Moreover, Petitioner has failed to show that he was prejudiced by trial counsel not investigating a mental health defense. Petitioner did not call an expert witness to explain his diagnosis or how it would have been the basis for a mental health defense. Rather, Petitioner testified about having a "blackout" or "psychotic break." Even in conjunction with the mental evaluations, this is insufficient to show what the expert evidence would have been. "There can be no speculation 'as to what the [expert] evidence would have shown and . . . how it would have benefitted Petitioner.'" *Brimmer v. State*, 29 S.W.3d 497, 512 (Tenn. Crim. App. 1998) (quoting *Davis v. State*, 912 S.W.2d 689, 698 (Tenn. 1995)). "'[W]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.'" *Terrence Woods v. State*, No. W2009-02060-CCA-R3-PC, 2010 WL 3619543, at *10 (Tenn. Crim. App. Sept. 15, 2010) (quoting *Black v. State*, 794 S.W.2d 752 ,757 (Tenn. 1990)), *perm. app. denied* (Tenn. Feb. 16, 2011). In order to show prejudice from failure to discover, interview, or present an expert witness, a petitioner must present favorable expert testimony at the post-conviction hearing. *See id.* The only way for Petitioner to show that he was prejudiced by trial counsel's failure to investigate a mental health defense would be for Petitioner to present the testimony that would be the basis for that defense at the post-conviction hearing. Petitioner made no such showing.

*Conclusion*

In sum, we hold that trial counsel was not deficient and Petitioner was not prejudiced. Therefore, Petitioner received effective assistance of counsel. For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE